IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Columbia Division

| | | |
|---|---|---|
| CHRISTIAN LEGAL SOCIETY; and CHRISTIAN LEGAL SOCIETY CHAPTER AT THE UNIVERSITY OF SOUTH CAROLINA SCHOOL OF LAW, | ) ) ) ) ) ) | CIVIL ACTION NO. 3:08-701-CMC |
| Plaintiffs, | ) ) | |
| v. | ) ) | **COMPLAINT** |
| | ) ) | **(Jury Trial Demanded)** |
| ANDREW A. SORENSON, in his official capacity as the President of The University of South Carolina; DENNIS A. PRUITT, in his official capacity as Vice President for Student Affairs at The University of South Carolina; JERRY BREWER, in his official capacity as Associate Vice President for Student Life and Development at The University of South Carolina; ANGELA M. DUSENBURY, in her official capacity as Coordinator for Student Government & Student Organizations at The University of South Carolina; MEMBERS OF THE STUDENT SENATE of The University of South Carolina, in their official capacities; PRESIDENT OF THE STUDENT BODY of The University of South Carolina, in his official capacity; ELIZABETH J. DAVIS, in her official capacity as Director of Student Affairs at The University of South Carolina School of Law; and MEMBERS OF THE STUDENT BAR ASSOCIATION FINANCE COMMITTEE of The University of South Carolina School of Law, in their official capacities. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

The Plaintiffs, Christian Legal Society Chapter at The University of South Carolina School of Law and Christian Legal Society, through their undersigned counsel, hereby complain of Defendants and would show the Court as follows:

## I. JURISDICTION AND VENUE

1. Plaintiffs Christian Legal Society and Christian Legal Society Chapter at The University of South Carolina School of Law bring this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivations of Plaintiffs' rights secured by the First and Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. § 1983. Jurisdiction is also conferred on this Court by 28 U.S.C. § 1331 because the cause of action arises under the Constitution and laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, the Defendants reside in the District of South Carolina and may be found and served in the District of South Carolina, and because a substantial part of the events or omissions giving rise to these claims arose in this District.

4. The case is properly assigned to the Columbia Division because the parties reside here and the events or omissions giving rise to these claims arose in the Columbia Division.

## II. PARTIES

5. Plaintiff Christian Legal Society ("CLS") is an IRC 501(c)(3)-qualified religious professional membership organization. Founded in 1961, CLS is an interdenominational association of more than three thousand Christian lawyers, law students, judges, and law professors. The members and officers of CLS-USC are each, by definition, members of CLS. CLS-USC is a local chapter of CLS. CLS is capable of suing in its own name and has standing to bring this action in its own name and on behalf of its affiliated chapter at CLS-USC because CLS-USC would possess standing to sue on their own, the lawsuit is germane to CLS's purposes of defending religious liberty and supporting its affiliated chapters, and the declaratory and injunctive relief requested does not require the participation of CLS-USC itself.

6. Plaintiff Christian Legal Society Chapter at The University of South Carolina School of Law ("CLS-USC") is an unincorporated organization of students attending The University of South Carolina School of Law. It is a local chapter of the national organization known as the Christian Legal Society. CLS-USC has standing to sue in its own name.

7. Defendant Andrew A. Sorenson is the President of The University of South Carolina. His duties include interpretation and application of the policies of the University respecting student affairs, including student organizations. He is responsible for approving budget proposals passed by the Senate and the President of the Student Body. Defendant Sorenson is sued in his official capacity.

8. Defendant Dennis A. Pruitt is the Vice President for Student Affairs at The University of South Carolina. His duties include interpretation and application of the policies of the University respecting student affairs, including student organizations. Defendant Pruitt is sued in his official capacity.

9. Defendant Jerry Brewer is the Associate Vice President for Student Life and Development at The University of South Carolina. His duties include interpretation and application of the policies of the University respecting student affairs, including student organizations. Defendant Brewer is sued in his official capacity.

10. Defendant Angela M. Dusenbury is the Coordinator for Student Government & Student Organizations at The University of South Carolina. Her duties include interpretation and application of the policies of the University respecting student affairs, including student organizations. Defendant Dusenbury is sued in her official capacity.

11. Defendant Members of the Student Senate of The University of South Carolina are charged with the responsibility and authority to vote on Senate legislation, including budgets submitted by the Senate Finance Committee, and to interpret and apply the University's Finance Codes concerning the disbursement of funds. The Defendant Members of the Student Senate are sued in their official capacities only. Pursuant to Fed. R. Civ. P. 25(d)(2) and because of the likelihood that substitution would be necessary for these student positions, the Members of the Student Senate are named only by their titles as such, subject to an order of this Court requiring that their names be added.

12. Defendant President of the Student Body of The University of South Carolina is charged with the responsibility and authority to approve legislation submitted to him by the Student Senate, including budgets, and to interpret and apply the University's Finance Codes concerning the disbursement of funds. The Defendant President of Student Body is sued in his official capacity only. Pursuant to Fed. R. Civ. P. 25(d)(2) and because of the likelihood that substitution would be necessary for this student position, the President of the Student Body is named only by his title as such, subject to an order of this Court requiring that his name be added.

13. Defendant Elizabeth J. Davis is Director of Student Affairs at The University of South Carolina School of Law. Her duties include interpretation and application of the policies of the University and of the School of Law respecting student affairs, including student organizations. Defendant Davis, acting pursuant to the University Senate Finance Code, rejected CLS-USC's budget proposal submission to the SBA Finance Committee. Defendant Davis is sued in her official capacity.

14. Defendant Members of the Student Bar Association Finance Committee of The University of South Carolina School of Law are charged with the responsibility and authority to create combined budget proposals on behalf of law school student organizations, and to submit these proposals to the Senate Finance Committee, and to interpret and apply the University's Finance Codes concerning the disbursement of funds. The Defendant Members of the Student Bar Association Finance Committee are sued in their official capacities only. Pursuant to Fed. R. Civ. P. 25(d)(2) and because of the likelihood that substitution would be necessary for these student positions, the Members

of the Student Bar Association Finance Committee are named only by their titles as such, subject to an order of this Court requiring that their names be added.

### III.    FACTUAL BACKGROUND

#### A.    The Christian Legal Society

15.    Christian Legal Society is a nationwide association of Christian lawyers, law students, law professors, and judges. The organization's purposes include providing a means of society, fellowship, and nurture among Christian lawyers; promoting justice, religious liberty, and Biblical conflict resolution; encouraging, discipling, and aiding Christian law students; and encouraging lawyers to furnish legal services to the poor. In furtherance of its purposes, the national Christian Legal Society organization maintains both attorney and law student chapters across the country.

16.    CLS-USC is the local University of South Carolina School of Law chapter of the national Christian Legal Society organization and a recognized student organization at The University of South Carolina.

17.    CLS-USC is governed by a chapter constitution. A true and correct copy of the CLS-USC Constitution is attached as Exhibit A.

18.    CLS-USC activities include regular meetings in which Christian perspectives on legal issues and the practice of law are discussed, and at which refreshments are provided, speaker events and educational events for the student body with attorneys and judges addressing religious freedom issues and Christian perspectives on law and law practice, travel to and participation in the annual national CLS conference, volunteer work at a local food bank, and parties to welcome students at the

6

beginning of the semester and to celebrate the end of the semester.

### B. Student Organization Recognition at The University of South Carolina

#### (1) Benefits of Recognition of Student Organizations

19. The University of South Carolina is a public university located in Columbia, South Carolina.

20. The University of South Carolina permits students to form and register student organizations through authority delegated to the Department of Student Life of the Division of Student Affairs.

21. A true and correct copy of the directory of all recognized student organizations at The University of South Carolina as listed on http://web.sa.sc.edu/search.asp, as of February 27, 2008, is attached as Exhibit B.

22. Recognition as a University of South Carolina registered student organization conveys numerous substantial benefits and privileges including access to channels of communication, use of physical facilities, and participation with other recognized student organizations in coordinating activities and events. Further, a critical benefit of recognition is the eligibility to apply for and receive funding through the Department of Student Life from funds generated from mandatory student activity fees by The University of South Carolina.

23. Recognition as a student organization at The University of South Carolina does not confer upon the organization, its policies, practices or views, the sponsorship or endorsement of the University.

#### (2) Criteria for Funding Student Organizations

24. The University of South Carolina permits the disbursement of funds, drawn from student activity fees, to a variety of student organizations. University of South Carolina Finance Code, §§ 300.05, 300.35. A true and correct copy of The University of South Carolina Student Government Finance Codes as of February 28, 2008 *available at* http://www.sg.sc.edu/PDF/codes/FinanceCodes.pdf, is attached as Exhibit C.

25. The disbursement of funds occurs in two phases. At the beginning of the semester, recognized student organizations may apply for and receive funds set aside for "general funding." Throughout the semester, student organizations may also apply for and receive funds earmarked for "special project funding."

26. Under the Finance Codes, "The [Senate] Finance Committee shall give priority to the allocation of general funding to organizations. The remaining money shall be placed into the special project account." Exhibit C at § 390.34.

27. In the 2007-2008 academic year, special funding money was exhausted by the end of the fall semester, leaving no money available for the spring semester.

28. Under the Finance Codes, "Religious Organizations" are ineligible for general funding. Exhibit C at § 390.05.

29. The Student Organization Treasurer's Manual states with respect to general funding: "You should remember that major consideration will be given to the educational value of the program component to the entire student body and to the number of students that benefit from the expenditure."

A true and correct copy of the 2007-2008 Student Organization Treasurer's Manual is attached hereto as Exhibit D.

30.  The Finance Codes provide, "[c]lubs and organizations that are not eligible to receive general funding may apply for funding for specific content neutral programs that are educational and of benefit to the general Student Body."  Exhibit C at § 390.10.

31.  Furthermore, the Finance Codes provide, "Any student organization, not eligible for general funding, can apply for funds for a special event funding which the Senate Finance Committee, with Senate approval, deems to be content neutral, educational and of benefit to the University as whole (e.g. Oxfam sponsorship of World Hunger Awareness Day)."  Exhibit C at § 390.25 B.

32.  The Finance Codes further provide that the Senate Finance Committee allocates special project funding according to the following criteria:

1. Past and expected future performance of the specific program/event
2. Educational value of the programs/events to the student body
3. Completion of the "Component or Project Funding Budget Request Information" form . . . .

Exhibit C at § 390.34.

(3)  Process for Funding Law School Student Organizations and CLS-USC's Rejection

33.  In January 2008, the SBA Legislative Council passed an "umbrella" legislation package to streamline the funding process for law school student organizations.  A true and correct copy of the umbrella legislation package, dated January

9

22, 2008, is attached as Exhibit E. The SBA Finance Committee now receives budget proposals from these organizations and combines the proposals into a single budget proposal, which the SBA Finance Committee then submits to the Senate Finance Committee at the University. Exhibit E, at 1.

34. The Senate Finance Committee reviews the combined budget proposal and introduces it to the full Senate for a vote. Finance Codes at § 320.05.

35. If the budget proposal passes, then the Senate submits it to the President of the Student Body, who approves or rejects the budget proposal. If the budget proposal passes, then it is submitted to the Vice President of Student Affairs, who forwards it to the President of the University. Exhibit E at § 320.30.

36. The President of the University reviews the budget proposal. If the President of the University rejects the budget proposal, then the budget proposal is returned to the Senate for reexamination and resubmission. Exhibit E at § 320.30.

37. On or about January 25, 2008, CLS-USC submitted a budget proposal for general funding to the Student Bar Association (SBA). A true and correct copy of the CLS-USC budget proposal for general funding, dated January 25, 2008, is attached as Exhibit F.

38. In February 2008, Defendant Davis informed Robert Ingram, the CLS-USC Chapter President, that she had to reject CLS-USC's budget proposal because CLS-USC is a religious organization and she was bound to enforce the Finance Codes' restriction on permitting religious organizations to participate in the general funding process.

39. As a result of the policies and the practices of Defendants, CLS-USC is

denied the full rights and benefits of recognized status by The University of South Carolina, including access to funding available to other recognized student organizations.

40. All acts of the Defendants, their officers, agents, servants, employees, or persons acting at their behest or direction herein alleged, were done and are continuing to be done under the color of state law, including the statutes, regulations, customs, policies and usages of the State of South Carolina, and pursuant to policies and/or customs established by The University of South Carolina, through Defendants.

41. Unless and until the Defendants are enjoined from denying recognized student organization status and its attendant benefits and privileges to CLS-USC on the basis that it is a religious organization, CLS-USC and its members will suffer and continue to suffer irreparable harm to their First Amendment rights.

42. Unless and until the Defendants are enjoined from employing a system of student organization funding that employs viewpoint discriminatory criteria, lacks adequate protections against viewpoint discrimination, and provides unbridled discretion to Defendants in determining whether and at what level to fund student groups, CLS-USC and other similarly situated student organizations at The University of South Carolina will suffer and continue to suffer irreparable harm to their First Amendment rights.

## COUNT I

### FREE SPEECH CLAUSE
### UNITED STATES CONST. AMEND. I

43. Plaintiffs restate and reallege each allegation set forth in paragraphs 1

11

through 42 as if set forth verbatim herein.

44. By denying general funding to religious organizations, including CLS-USC, and by employing a system to distribute general funds that lacks adequate protections against viewpoint discrimination and provides unbridled discretion and invites and results in viewpoint discrimination, Defendants have violated and will continue to violate the right to free speech guaranteed to CLS, CLS-USC, and similarly situated religious organizations at The University of South Carolina by the First Amendment to the United States Constitution and made applicable to the Defendants by the Fourteenth Amendment.

45. By employing a system to distribute special project funding to student groups in a manner that provides unbridled discretion and invites and results in viewpoint discrimination, Defendants have violated and will continue to violate the right to free speech guaranteed to CLS, CLS-USC, and similarly situated religious organizations at The University of South Carolina by the First Amendment to the United States Constitution and made applicable to the Defendants by the Fourteenth Amendment.

## COUNT II

### FREE EXERCISE CLAUSE
### UNITED STATES CONST. AMEND I

46. Plaintiffs restate and reallege each allegation set forth in paragraphs 1 through 45 as if set forth verbatim herein.

47. By denying funding to religious student organizations, including CLS-USC, on the basis of their religious beliefs and activities and identity as a religious

organization, Defendants have violated and will continue to violate the right to free exercise of religion guaranteed to CLS, CLS-USC, and other similarly situated religious student organizations, by the First Amendment to the United States Constitution and made applicable to the states and their political subdivisions by the Fourteenth Amendment.

**WHEREFORE**, Plaintiffs respectfully request that this Court order the following relief:

1. A declaration that Defendants' denial of general funding to recognized religious student organizations, including CLS-USC, violates the United States Constitution;

2. A declaration that Defendants' policies for distributing special project funds to student groups or organizations violates the United States Constitution;

3. A permanent injunction enjoining Defendants from denying general funding to recognized religious student organizations, including CLS-USC; and prohibiting Defendants, their employees, officers, and agents, and all persons acting by and through them, from withholding any other of the rights, privileges, benefits, or incidents of recognized student organization status from CLS-USC or from retaliating against CLS-USC and its members directly or indirectly for exercising their constitutional rights;

4. A permanent injunction requiring Defendants to implement policies and procedures for allocating special project funds that include adequate protections against viewpoint discrimination;

13

5. An award of reasonable costs and attorneys' fees incurred by Plaintiffs in prosecuting this action pursuant to 42 U.S.C. § 1988;

6. That this Court retain jurisdiction over this case for the purposes of enforcement of any order; and

7. Such other and further relief as the Court deems just and proper under the circumstances.

February 28, 2008         s/ David W. Holmes
　　　　　　　　　　　　David W. Holmes (Fed. Bar No. 1927)
　　　　　　　　　　　　HOLMES LAW FIRM
　　　　　　　　　　　　712 N Main St.
　　　　　　　　　　　　Greenville, SC 29609
　　　　　　　　　　　　Tel. (864) 271-2381
　　　　　　　　　　　　Fax. (864) 271-7994
　　　　　　　　　　　　davidholmes@holmes-law.com

　　　　　　　　　　　　Michael Casey Mattox (VA Bar No. 47148)
　　　　　　　　　　　　Isaac Fong (CA Bar No. 250242)
　　　　　　　　　　　　CENTER FOR LAW AND RELIGIOUS FREEDOM
　　　　　　　　　　　　8001 Braddock Road, Suite 300
　　　　　　　　　　　　Springfield, VA 22151
　　　　　　　　　　　　Tel: (703) 642-1070
　　　　　　　　　　　　Fax: (703) 642-1075
　　　　　　　　　　　　cmattox@clsnet.org
　　　　　　　　　　　　ifong@clsnet.org
　　　　　　　　　　　　*(Pro Hac Vice Motions to be Filed)*

　　　　　　　　　　　　Of Counsel:

　　　　　　　　　　　　Benjamin W. Bull (AZ Bar No. 009940)
　　　　　　　　　　　　ALLIANCE DEFENSE FUND
　　　　　　　　　　　　15100 N 90th Street
　　　　　　　　　　　　Scottsdale, AZ 85260
　　　　　　　　　　　　Tel: (800) 835-5233
　　　　　　　　　　　　Fax: (480) 444-0025
　　　　　　　　　　　　bbull@telladf.org

Steven H. Aden (D.C. Bar No. 466777)
ALLIANCE DEFENSE FUND
CENTER FOR ACADEMIC FREEDOM
801 G Street, Suite 507
Washington, DC 20001
Tel: (202) 637-4610
Fax: (202) 347-3622
saden@telladf.org

Counsel for Plaintiffs Christian Legal Society
and Christian Legal Society Chapter
at The University of South Carolina School of Law

15